# RESCRIPT OPINIONS.

COMMONWEALTH vs. HENRY WALKER. No. 11-P-1687. February 12, 2013. *Sex Offender. Practice, Civil,* Sex offender. *Evidence,* Sex offender, Expert opinion. *Witness,* Expert. Further appellate review granted, 465 Mass. 1102 (2013).

After a jury-waived trial, a judge of the Superior Court found the defendant to be a sexually dangerous person, as defined in G. L. c. 123A, § 1,[1] and committed him pursuant to § 14(*d*) thereof. On appeal, the defendant challenges (1) the sufficiency of the evidence supporting the judge's conclusion that the defendant represents a menace to the health and safety of others, and (2) the propriety of certain testimony of the Commonwealth's expert witness.

The thrust of the defendant's appeal concerns the nature of the defendant's predicted sexual offenses together with any resulting harm.[2] The defendant avers that the judge's conclusions, viewed in their entirety, suggest a risk of reoffending limited to acts of exhibitionism, the injury therefrom consisting of shock and alarm to the public — in contravention of *Commonwealth* v. *Suave,* 460 Mass. 582, 587-588 (2011). While the judge did not have the benefit of *Suave* at the time of trial, we discern no reason to disturb his extensive findings or ultimate conclusion. We affirm.

"In response to a challenge to the sufficiency of the evidence, we inspect a finding under the settled standard: 'whether, after viewing the evidence (and all permissible inferences) in the light most favorable to the Commonwealth, any rational trier of fact could have found, beyond a reasonable doubt, the essential elements of sexual dangerousness, as defined by G. L. c. 123A, § 1.' " *Commonwealth* v. *Husband,* 82 Mass. App. Ct. 1, 4 (2012), quoting from *Commonwealth* v. *Blake,* 454 Mass. 267, 271 (2009) (Ireland, J., concurring). "Weighing and crediting the testimony of witnesses during proceedings under G. L. c. 123A 'are for the trier of fact, and we will not substitute our judgment for that of the trier of fact.' " *Commonwealth* v. *Sargent,* 449 Mass. 576, 583

---

[1] "In order to find the defendant is a 'sexually dangerous person,' the Commonwealth must prove three things: (1) the defendant has been convicted of a '[s]exual offense[]' . . . ; (2) he suffers from a '[m]ental abnormality' or 'personality disorder[]' . . . ; and (3) as a result of such mental abnormality or personality disorder, the defendant is 'likely to engage in sexual offenses if not confined to a secure facility.' " *Commonwealth* v. *Suave,* 460 Mass. 582, 584 n.3 (2011), quoting from G. L. c. 123A, § 1 (definition of "[s]exually dangerous person"). The defendant *does not contest* that he has been convicted of a "[s]exual offense" within the meaning of G. L. c. 123A, § 1.

[2] The defendant is an exhibitionist who has a history of exposing himself to adult women, two times in conjunction with acts including sexual contact. The governing offenses relate to matters occurring in December, 2007, resulting in convictions of indecent assault and battery and open and gross lewdness.

(2007), quoting from *Commonwealth* v. *Bradway*, 62 Mass. App. Ct. 280, 291 (2004).

With regard to the second element of the Commonwealth's prima facie case (see note 1, *supra*), a determination that the defendant suffers from a "[m]ental abnormality" turns in relevant part on whether his disorder makes him "a menace to the health and safety of other persons." G. L. c. 123A, § 1, as inserted by St. 1999, c. 74, § 4. Although not statutorily defined, the term "menace," as used in the definition of "[m]ental abnormality . . . connotes a person whose conduct will objectively put his victim in fear of bodily harm by reason of a battery and specifically, a contact sex crime." *Suave, supra* at 588. Accordingly, "the Commonwealth must show the defendant's predicted sexual offenses will instill in his victims a reasonable apprehension of being subjected to a contact sex crime. A generalized fear or some other unspecified psychological harm such as shock or alarm will not suffice." *Ibid.*

As the defendant notes, the judge indeed determined that the defendant's exhibitionism shocks and alarms those who bear witness. Importantly, however, the judge additionally specified that on two occasions, "the [defendant's] exhibitionism included acts of sexual contact as well as exhibitionism itself." Following an "exhaustive and fair" assessment of conflicting expert testimony, *Husband, supra* at 10, the judge credited the view of the Commonwealth's expert, Dr. Murphy, that exhibitionists who also engage in contact offending are "more likely to be associated with contact sexual offenses in the future." This judgment was neither contrary to the clear weight of the evidence nor otherwise improper. See, e.g., *Commonwealth* v. *Dinguis*, 74 Mass. App. Ct. 901, 903 (2009). Here, unlike *Suave*, "there was . . . reason to believe the defendant's future sexual offenses would escalate into contact offenses," warranting the conclusion that "the manner in which the defendant would likely commit a future 'sexual offense' . . . would . . . render him a 'menace to the health and safety of other persons.' " *Suave*, 460 Mass. at 588, quoting from G. L. c. 123A, § 1. As such, the evidence presented furnished proof beyond a reasonable doubt that the defendant suffered from a "[m]ental abnormality" within the meaning of G. L. c. 123A, § 1.

Beyond challenging the sufficiency of the evidence underlying the judge's determination that the defendant satisfied the second prong of sexual dangerousness, the defendant also challenges the judge's conclusions with respect to the third prong; namely, that if the defendant is not confined to a secure facility, he is likely to reoffend. G. L. c. 123A, § 1. To this end, the judge stated: "I credit Dr. Murphy's testimony that [the defendant] will likely engage in future noncontact offenses, but that there is certainly a significant possibility of future contact offenses." The defendant contends that the judge's use of the phrase "significant possibility" cannot compel a determination that the defendant is otherwise "likely" to commit a contact-based offense in the future. We disagree.

In deciding the meaning of "likely" as the term is used within G. L. c. 123A, the Supreme Judicial Court expressly approved the holdings of a line of cases decided under a previous version of the statute as supporting a finding that the defendant was "likely" to recidivate, albeit in the absence of an explicit use of the term. See *Commonwealth* v. *Dagle*, 345 Mass. 539, 543 ("distinct possibility"), cert. denied, 375 U.S. 863 (1963); *Commonwealth* v. *McHoul*, 372 Mass. 11, 14 (1977) ("strong propensity"); *Commonwealth* v. *Walsh*, 376

Mass. 53, 59 & n.3 (1978) ("good possibility"); *Commonwealth* v. *Boucher*, 438 Mass. 274, 280-281 (2002), citing *Commonwealth* v. *Rodriguez*, 376 Mass. 632, 643-645 (1978) ("significant probability"). Likewise, here, the judge's use of the phrase "significant possibility" is contextually "consistent with the broad common understanding of the term 'likely.' " *Boucher, supra* at 281. Moreover, we are not persuaded that the Commonwealth otherwise failed to establish that as a result of the defendant's exhibitionism, he is likely to commit prohibited sexual offenses if he is not civilly confined.[3]

Finally, we consider whether Dr. Murphy improperly opined that the defendant "probably had engaged in many more [acts of exhibitionism] for which he had not been apprehended." At trial, defense counsel failed to object to the admission of this testimony; accordingly, we review for a substantial risk of a miscarriage of justice. *Commonwealth* v. *Alphas*, 430 Mass. 8, 13 (1999). We find none here. Indeed, the defendant's experts agreed that exhibitionism is chronic and compulsive. Even assuming error, the balance of the Commonwealth's evidence provided sufficient support for all essential elements of sexual dangerousness.

*Judgment affirmed.*

*Joseph M. Kenneally* for the defendant.

*Kris C. Foster*, Assistant District Attorney, for the Commonwealth.

---

[3]In evaluating the defendant's risk of recidivism, the judge considered other specific behaviors of the defendant, including evidence of the defendant's hypersexuality, history of substance abuse, chronic homelessness, antisocial personality traits, limited participation in sex offender treatment, and poor insight into and understanding of his issues.