COMMONWEALTH *VS.* DANIEL D. ALMEIDA.

No. 11-P-1745.

Bristol. January 16, 2013. - March 27, 2013.

Present: GRASSO, BERRY, & KAFKER, JJ.

Further appellate review granted, 465 Mass. 1108 (2013).

*Sex Offender. Constitutional Law,* Sex offender. *Due Process of Law,* Sex offender. *Evidence,* Sex offender.

At the jury-waived trial on the Commonwealth's petition for the civil commit-
ment of the defendant as a sexually dangerous person pursuant to G. L.
c. 123A, the judge's findings of fact supported his conclusion that the
defendant was a menace to the health and safety of others if he were not
confined to a secure facility, even though he was predicted to commit only
menacing noncontact sexual offenses [457-459]; further, this court con-
cluded that the significant procedural and substantive requirements of G. L.
c. 123A render the civil commitment of such a menacing sexual offender
consistent with the concept of ordered liberty [459-462].

PETITION for civil commitment filed in the Superior Court
Department on July 15, 2009.

The case was heard by *Robert C. Cosgrove*, J.

*Harry L. Miles* for the defendant.

*Mary O'Neil*, Assistant District Attorney, for the Com-
monwealth.

KAFKER, J. In this case, we address an issue raised but not
resolved in *Commonwealth* v. *Suave*, 460 Mass. 582 (2011)
*(Suave)*. In *Suave*, the court held that civil confinement as a
sexually dangerous person (SDP) under G. L. c. 123A (statute)
cannot be based, as a general rule, on the likelihood of noncon-
tact sexual offenses alone. See *id.* at 588. But the court further
stated that such noncontact offenses may be committed in a
menacing manner that satisfies the statutory requirements if they
will "objectively put [a] victim in fear of bodily harm by reason
of . . . a contact sex crime." *Ibid.* Mindful of the Supreme
Judicial Court's admonition that we must undertake a "fact

specific" inquiry, we further define here what it means to be an SDP who is a "menace to the health and safety of others" pursuant to G. L. c. 123A. *Id.* at 588-589. More particularly, we consider whether the defendant's "predicted sexual offenses will instill in his victims a reasonable apprehension of being subjected to a contact sex crime." *Id.* at 588. We conclude that his predicted sexual offenses and associated conduct — which do not involve contact sex crimes, but are much like his past crimes that involved stalking-like behavior and breaking and entering into another person's home for the purpose of voyeurism or exhibitionism — will instill such apprehension. We therefore conclude that the defendant's commitment as an SDP satisfies the requirements of the statute and substantive due process. We affirm the decision of the trial court.

*Legal background.* Pursuant to G. L. c. 123A, the Commonwealth may petition to commit an individual to the treatment center for sexually dangerous persons (treatment center) for an indefinite period of time, subject to periodic review, upon a showing that he is an SDP. See *Commonwealth* v. *Bruno*, 432 Mass. 489, 494-497 & n.7 (2000). Such a showing requires that the Commonwealth prove three things beyond a reasonable doubt: "(1) the defendant has been convicted of a '[s]exual offense,' as defined in G. L. c. 123A, § 1; (2) he suffers from a '[m]ental abnormality' or '[p]ersonality disorder,'[1] as those terms are defined in § 1; and (3) as a result of such mental abnormality or personality disorder, the defendant is 'likely to engage in sexual offenses if not confined to a secure facility.' G. L. c. 123A, § 1 (definition of '[s]exually dangerous person')." *Suave, supra* at 584 n.3. A mental abnormality is defined by the statute as "a congenital or acquired condition of a person that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal acts to a degree that makes the person a menace to the health and safety of other persons." G. L. c. 123A, § 1, as amended through St. 1999, c. 74, § 4.

---

[1]In the instant case, the judge found that the defendant has a mental abnormality, a point upon which all the Commonwealth's experts agreed. The Commonwealth's experts differed in their opinions as to whether the defendant has a personality disorder, and the judge made no explicit finding on this aspect of the second element.

The first element is not in dispute here, as the defendant's prior sexual offenses are well established. The defendant also does not contest that he suffers from exhibitionism and voyeurism as set out in the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (4th ed. 2000), which satisfies the medical element of the mental abnormality requirement. He also does not contest the third element, at least to the extent that he is likely to engage in noncontact sexual offenses in the future.[2] He contends, however, that because he is not likely to commit contact sexual offenses, he cannot be considered a menace to the safety of others and therefore does not satisfy the remainder of the statutory requirements, or, if he does, the statute is unconstitutional.

The Supreme Judicial Court addressed the statutory issue in *Suave*. In that case, the defendant was convicted numerous times of open and gross lewdness or indecent exposure, with an otherwise "unremarkable" criminal history, and the judge found him "likely to commit only a 'hands-off, noncontact sex[ual] offense[] involving exposing himself and masturbating in front of unsuspecting strangers.' " *Suave, supra* at 586. The court focused on the definition of "mental abnormality,"[3] parsing it into "medical and legal aspects." *Id.* at 587. The medical portion was satisfied because Suave "suffer[ed] from a mental disorder, exhibitionism, which predisposes him to commit criminal sexual acts, namely, open and gross lewdness and lascivious behavior." *Ibid.* The legal aspect hinged on "whether the defendant's disorder makes him 'a menace to the health and safety of other persons.' " *Ibid.*, quoting from the definition of "mental abnormality" in G. L. c. 123A, § 1. The court further construed "menace" with reference to the common-law threatened battery type of assault, holding as follows: "The term 'menace,' as it is used in the definition of '[m]ental abnormality' in G. L. c. 123A, § 1 . . . connotes a person whose conduct will objectively put his victim in fear of bodily harm by reason of a battery and, specifically, a contact sex crime. In

[2]The defendant's score on the "Static 99" test, designed to predict recidivism, ranged from 8 to 10, thereby placing him in a high risk category.

[3]In *Suave*, the trial judge found that the defendant suffered from a "mental abnormality," but not a "personality disorder." *Id.* at 584-585.

other words, the Commonwealth must show the defendant's predicted sexual offenses will instill in his victims a reasonable apprehension of being subjected to a contact sex crime." *Id.* at 588.

The *Suave* court went on, however, to state that it did "not suggest that all sex offenders who have committed only non-contact sexual offenses and who are likely to commit only non-contact sexual offenses in the future are not menaces to the health and safety of other persons. Each case is fact specific." *Id.* at 588-589. In particular, the court emphasized that the judge found no evidence that Suave "had ever stalked, lured, approached, confined, or touched a victim, that there was no reason to believe he would target children, and that there was no reason to believe the defendant's future sexual offenses would escalate into contact offenses." *Id.* at 588. We must apply these principles to the facts of this case, to which we now turn.

*Facts.* We summarize the detailed findings of the trial judge after a jury-waived trial, supplemented by uncontested details from the record.[4] At the time of trial, the defendant was forty years old, and his criminal record included at least four separate incidents resulting in convictions of sexual offenses, as well as various crimes apart from those incidents.

The first sexual offense, in 1996, was open and gross lewdness. On this occasion, a police officer found the defendant masturbating in the backyard of someone else's house; he did not stop masturbating when the officer arrived, but did not resist when he was arrested. A seventeen year old who lived in the house reported to police that she was "very frightened" because the defendant had been watching her for some time through the window of her house and had written her letters without her mother's knowledge. While charges from this incident were pending, the defendant "caused a third party to put a box with his photo taped on it on the victim's doorstep, resulting in a further charge of intimidation of a witness." He received a six-month suspended sentence.

---

[4] In particular, we note that the defendant accepts the description of his criminal history in the report of one of the Commonwealth's experts who relied upon and quoted from contemporaneous police reports, which were also exhibits at trial.

In 1999, the defendant was charged with, and subsequently convicted of, lewd and lascivious behavior, as well as assault and battery on a police officer. He knocked on a woman's window, said something, and began exposing himself. A police officer found him with his pants down to his knees and his penis in his hand, and chased him as he tried to flee. The defendant tried to punch the officer multiple times before being subdued. He served one year in the house of correction on these charges.[5]

In 2005, the defendant made obscene telephone calls to multiple individuals. In particular, he repeatedly called a counsellor at a women's center and left sexually graphic messages.[6] Among other things, he stated that he was masturbating; the judge found that the reported "accompanying slapping sounds lent credibility to that assertion." The defendant received concurrent three-month sentences on the obscene call charges.

The governing incident for the SDP petition underlying this appeal occurred in 2007, and included charges of accosting and annoying a member of the opposite sex, assault and battery, and breaking and entering in the daytime with intent to commit a felony, thereby putting a person therein in fear.[7] The defendant and his family rented an apartment on the third floor of a house where the victim, an adult woman, lived in the second-floor apartment. Her mother, who owned the home, lived on the first floor. The victim was at home, showering, while her six month old baby and two toddlers slept. She had a baby monitor with her in the bathroom, and her apartment door was closed but not locked, because she expected two older children to come home around that time. The defendant entered the victim's apartment, took the baby out of the crib, and put her on the floor, causing the baby to cry loudly. When the victim opened the shower door, she found the defendant standing in her bathroom. She screamed; the defendant laughed, said, "What?" and fled. The

---

[5]Additionally, in 2001, a woman saw the defendant staring into the window of her house, specifically the window of her five year old son's bedroom. This incident resulted in a conviction of disorderly conduct.

[6]In these messages, "[a]mong other things, [the defendant] described [the counsellor's] breasts, and his desire to place his penis between them. He suggested that he wished her to 'suck on his . . . cock.' "

[7]These offenses occurred while the defendant was on probation for the obscene telephone call convictions.

defendant was convicted of all the charged offenses and sentenced to two years in the house of correction on the assault and battery conviction, plus five years' probation on the remaining charges.

The judge credited the Commonwealth's expert testimony and concluded that the defendant "suffers from a mental abnormality that manifests itself, among other ways, in voyeuristic and exhibitionistic behavior." The judge based this conclusion on the accepted medical definitions of voyeurism and exhibitionism, as well as the facts of the defendant's past crimes described above. The judge also found beyond a reasonable doubt that the defendant was likely to reoffend, citing the expert testimony and the defendant's denial of his past offenses, limited cognitive abilities, limited participation in sex offender treatment, and past violations of probation.

The judge further found: "Although [the defendant's] criminal record includes some assaultive behavior, his sexual offenses to date have all been non-contact offenses, all involving adult women roughly his own age."[8] The judge found that the latest offense was an " 'escalation,' in that for the first time on record, [the defendant] entered a home, and then a bathroom, to gratify his voyeuristic impulses," but stated that the incident "may not be useful" in predicting future behavior because the breaking and entering was to another apartment in the three-family home in which the defendant lived,[9] and his immediately preceding offenses, the obscene telephone calls in 2005, "arguably represented a 'de-escalation,' " because they involved "neither physical presence on the property of a victim nor exposure of [his] genitals."[10] The judge therefore stated that "the evidence does not permit a reasonable inference as to whether the shower incident is a precursor or an outlier."[11] Although he was

---

[8]We note that when the 1996 incident occurred involving the seventeen year old girl, the defendant would have been about twenty-six years old.

[9]We note that in 1998, the defendant had been charged with breaking and entering in the nighttime with intent to commit a felony, although not in conjunction with a sexual offense. The court filed the charge upon the defendant's guilty plea. Prior to that, in 1989, he had been charged with four counts of the same offense, which resulted in one charge placed on file and the remainder nol prossed.

[10]He was, however, apparently masturbating while making these calls.

[11]We understand the trial judge's conclusion here to mean that the evidence does not permit a reasonable inference whether the shower incident supports a

concerned by the act of putting the baby on the floor (which was the basis of the assault and battery charge), he believed it indicated only "simple dangerousness" rather than sexual dangerousness.

Based on these considerations, the judge found: "The overwhelming weight of the evidence is that future sexual misconduct by [the defendant], if it occurs, will involve conduct much like that in the past — voyeurism, exhibitionism — in short, non-contact offenses."

As *Suave* had not been decided at the time, the judge then applied our decision in *Commonwealth* v. *Grant*, 73 Mass. App. Ct. 471 (2009), *S.C.*, 455 Mass. 1022 (2010), and concluded that the defendant "is likely to engage in sexual offenses to a degree that makes him a menace to the health and safety of other persons if not confined to a secure facility."[12] The judge then discussed and rejected the defendant's due process argument, and ordered him committed as an SDP.

*Statutory applicability.* The defendant claims that, on the facts found by the trial judge, he was legally entitled to dismissal of the SDP petition. He asserts that *Suave* requires a finding of a likelihood to commit contact sexual offenses, and the judge's finding to the contrary means the Commonwealth failed to satisfy its burden. We disagree.

As discussed above, *Suave* does not necessarily require an SDP to be likely to commit a contact sexual offense; the court explicitly declined to hold that those "who are likely to commit

---

prediction that the defendant is likely to engage in contact sexual offenses. We discern this from the context of this part of his decision, which was addressed to the issue whether the escalation represented by the shower incident was a precursor to contact offenses. We do not interpret the judge's conclusion to mean that the evidence does not permit a reasonable inference whether the defendant would take advantage of another opportunity to enter a person's home to satisfy his voyeuristic and exhibitionistic impulses and compulsions. Rather, as the judge noted, "whether [the defendant] acted with premeditation, or simply opportunistically upon hearing [his victim] in the shower, he acted on voyeuristic impulses. Moreover, his exhibitionistic compulsions appear to negate any typical voyeuristic reticence."

[12]In *Grant*, this court held that "the Legislature clearly intended sexually dangerous persons to include those who commit noncontact offenses." *Id.* at 478. *Suave*, as explained above, has effectively overruled the broader holding in *Grant* and limited the type of noncontact offenses that can be considered menacing under the statute. See *Suave*, 460 Mass. at 588-589.

only noncontact sexual offenses in the future are not menaces to the health and safety of other persons." *Suave*, 460 Mass. at 589. On the contrary, *Suave* concludes that sexual assaults, in the sense of threatened batteries, are sufficiently menacing to bring predicted noncontact offenses within the statute's ambit. See *id.* at 587-588. Although provoking "generalized fear" or "shock or alarm," such as may have been anticipated in Suave's case, is insufficient to make an offender a menace, the Commonwealth meets its burden by showing that a defendant's likely sexual offenses and associated conduct will "objectively put his victim in fear of bodily harm by reason of . . . a contact sex crime." *Id.* at 588. The Commonwealth does not need to demonstrate that the defendant is likely to engage in contact sexual offenses. It is enough that a victim would objectively fear such an offense from the defendant's likely sexual offenses and associated conduct. The menace involved in a threatened battery type of assault is sufficient. *Ibid.*

Although the judge did not have the benefit of *Suave*, his findings of fact nonetheless support his conclusion that the defendant is a menace. This case is distinct from *Suave*, where "the judge found no evidence that the defendant had ever stalked, lured, approached, confined, or touched a victim" or targeted children. *Ibid.* Here, in his 1996 offense, the defendant repeatedly targeted a seventeen year old for his sexual attentions and subsequent intimidation. In his 1999 offense, the defendant used force against a police officer in conjunction with his exhibitionistic act. Most menacingly, in the governing offense, the defendant entered the victim's apartment and approached her in her bathroom while she was showering, thereby putting her in fear, and the judge found that this represented an escalation in his criminal behavior.[13] A woman who emerges from the shower, finding a man standing in her bathroom and her crying baby removed from her crib, will objectively and reasonably fear that

---

[13]Moreover, the judge could have found that the assault and battery on the baby, though not conducted with a sexual intent regarding the infant, was a part of the defendant's scheme to lure the victim out of the shower for a sexual purpose. See generally G. L. c. 123A, § 1, as amended through St. 2004, c. 66, § 6 (defining "[s]exual offense" to include "any other offense, the facts of which, under the totality of the circumstances, manifest a sexual motivation").

a contact sex crime is imminent. In light of the judge's finding that the defendant was likely to act on his voyeuristic impulses and exhibitionistic compulsions and to engage in "conduct much like that in the past," the judge was justified in concluding that the defendant was "a menace to the health and safety of other[s]." The specific facts of this case therefore permit the defendant's adjudication as an SDP even though he is predicted to commit only menacing noncontact sexual offenses. See and compare *id.* at 588-589.

*Due process.* In light of our conclusion that the statute permits the defendant's commitment, we must address the question, not previously decided, "whether the statute, if construed to permit such a result, would pass constitutional muster." *Commonwealth* v. *Grant,* 455 Mass. at 1024. Compare *Suave, supra* at 589 ("Because of the result we reach, we do not need to decide the constitutional question"). The defendant argues that committing him is inconsistent with the substantive due process protections of the Federal Constitution and the Massachusetts Declaration of Rights.[14]

Substantive due process precludes the government from "engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty." *Commonwealth* v. *Bruno,* 432 Mass. at 503, quoting from *Aime* v. *Commonwealth,* 414 Mass. 667, 673 (1993) (quotations and citations omitted). "Although freedom from physical restraint 'has always been at the core of the liberty protected by the Due Process Clause . . . ,' that liberty interest is not absolute." *Kansas* v. *Hendricks,* 521 U.S. 346, 356 (1997) (*Hendricks*), quoting from *Foucha* v. *Louisiana,* 504 U.S. 71, 80 (1992). Indeed, the United States Supreme Court has consistently upheld against substantive due process challenge statutes providing for the "forcible civil detainment of people who are unable to

---

[14]We apply the same analysis to both Federal and State due process provisions in this context. See *Dutil, petitioner,* 437 Mass. 9, 10 n.2 (2002) ("We have not differentiated the substantive due process standard of the Massachusetts Declaration of Rights from that of the Federal Constitution in cases involving substantive due process challenges to G. L. c. 123A"); *Commonwealth* v. *Blake,* 454 Mass. 267, 276 n.9 (2009) (Ireland, J., concurring) (same). Cf. *Kenniston* v. *Department of Youth Servs.,* 453 Mass. 179, 183-184 & n.7 (2009).

control their behavior and who thereby pose a danger to the public health and safety," provided "the confinement takes place pursuant to proper procedures and evidentiary standards." *Id.* at 357.

There is no argument in the instant case that the procedures or evidentiary standards are not proper. An individual whom the Commonwealth seeks to commit as an SDP has a right, first, to a probable cause hearing at which he may have the assistance of counsel, present evidence, and cross-examine witnesses. G. L. c. 123A, § 12(*c*), (*d*). See *Commonwealth* v. *Bruno, supra* at 503-504. If the judge finds that the Commonwealth has established probable cause to believe the person is an SDP, he is committed to the treatment center for a strictly limited time during which he is examined by two qualified examiners and, if he wishes, another examiner of his choosing. G. L. c. 123A, § 13(*a*), (*d*). See, e.g., *Gangi* v. *Commonwealth*, 462 Mass. 158, 160-163 (2012). Again, he "shall be entitled to counsel and, if indigent, the court shall appoint an attorney." G. L. c. 123A, § 13(*c*), inserted by St. 1999, c. 74, § 8. Unless at least one of the qualified examiners concludes that the individual is an SDP, the Commonwealth's petition must be dismissed. *Johnstone, petitioner*, 453 Mass. 544, 553 (2009).

If the Commonwealth satisfies these requirements, the individual has a right to a jury trial. G. L. c. 123A, § 14(*a*). "Certain rights ordinarily afforded criminal defendants have been extended to those civilly charged with being sexually dangerous persons, e.g., the right to counsel, the right to have counsel appointed if the defendant is indigent, the right to call expert witnesses (and, if indigent, the right to have the Commonwealth pay for them), the right to have process issue to secure the attendance of witnesses, the right to a unanimous jury verdict, [and] the requirement that the case be proved beyond a reasonable doubt. See G. L. c. 123A, § 14(*b*) & (*d*)." *Commonwealth* v. *Dresser*, 71 Mass. App. Ct. 454, 458 (2008). All these rights and the effective assistance of counsel must be afforded before commitment can occur. See *Commonwealth* v. *Ferreira*, 67 Mass. App. Ct. 109, 114-115 (2006). After an individual is committed, he has the right every twelve months to petition for examination and discharge pursuant to G. L.

c. 123A, § 9, upon which he is given substantially the same rights, and the Commonwealth bears the burden of demonstrating his continued sexual dangerousness beyond a reasonable doubt. *Wyatt, petitioner*, 428 Mass. 347, 360 (1998), citing *Andrews, petitioner*, 368 Mass. 468, 489-490 (1975). See *Miller, petitioner*, 71 Mass. App. Ct. 625, 626, 636 (2008); *LeSage, petitioner*, 76 Mass. App. Ct. 566, 574 (2010). These "significant procedural protections" form an important part of the statutory scheme. *Commonwealth* v. *Knapp*, 441 Mass. 157, 165 (2004).

We turn now to the substantive standards for civil commitment. In *Hendricks*, the Court rejected a substantive due process challenge to a statute that contains many elements in common with our SDP statute. That statute, like ours, required findings of prior sexual offenses, future sexual dangerousness, and a link between those findings and "the existence of a 'mental abnormality' or 'personality disorder' that makes it difficult, if not impossible, for the person to control his dangerous behavior." *Hendricks*, 521 U.S. at 358. See *Dutil, petitioner*, 437 Mass. 9, 16 (2002) ("Our decisions . . . have. . . required that the Commonwealth demonstrate present dangerousness . . . and the link of this dangerousness to a mental condition"). Because the Kansas statute, like ours, required a "lack of volitional control, coupled with a prediction of future dangerousness," it sufficiently distinguished sexual predators subject to civil commitment from "other dangerous persons who are perhaps more properly dealt with exclusively through criminal proceedings." *Hendricks, supra* at 360. See *Kansas* v. *Crane*, 534 U.S. 407, 409-413 (2002).

However, unlike the Kansas statute upheld in *Hendricks*, and others addressed in the case law, our statute does not limit itself to "past sexually *violent* behavior and . . . a likelihood of such conduct in the future" (emphasis supplied). *Hendricks, supra* at 357. As explained above, our statute is drafted and interpreted to encompass a wider range of likely sexual offenses and associated conduct.[15] In order to adjudicate a defendant an SDP, a finding is required that the defendant is likely to engage in

---

[15]The statutory definition of sexual offense includes some crimes that may not involve violence, such as "open and gross lewdness and lascivious

future sexual offenses and associated conduct that would instill in a victim an objectively reasonable apprehension of a contact sexual offense. *Suave, supra* at 588. However, a finding that the defendant is likely to actually engage in a contact sexual offense is not required. *Ibid.* The question then becomes whether civil confinement for such an offender violates substantive due process.

We conclude that the significant procedural and substantive requirements discussed above render the civil commitment of such a menacing sexual offender consistent with our concept of ordered liberty. Here, the defendant has been convicted of a number of prior sexual offenses. As established pursuant to the required procedures and evidentiary standards, he has a mental abnormality that renders him unable to control his behavior. Furthermore, his likely sexual offenses and associated conduct present a significant danger to public health and safety, as they not only expose victims to noncontact sexual offenses, but "instill in . . . victims a reasonable apprehension of being subjected to a contact sex crime." *Suave,* 460 Mass. at 588. Confinement of such an offender "until his mental abnormality no longer causes him to be a threat to others," with such confinement being "subject to periodic review of the patient's suitability for release," is constitutionally permissible. *Hendricks, supra* at 363-364 (quotation omitted). The application of the statute to commit the defendant to the treatment center as an SDP in the circumstances of this case therefore comports with due process. See *id.* at 357; *Kansas* v. *Crane, supra* at 409-410.

*Conclusion.* The facts found by the judge permit and support his determination that the defendant is an SDP pursuant to the statute. Application of the statute to reach such a determination on the particular facts of this case does not offend substantive due process. We therefore affirm the judgment.

*So ordered.*

---

behavior," G. L. c. 272, § 16, and "accosting or annoying persons of the opposite sex and lewd, wanton and lascivious speech or behavior," G. L. c. 272, § 53. G. L. c. 123A, § 1, as amended through St. 2004, c. 66, §§ 4, 5.