A jury found that Kevin Curlew is a sexually dangerous person (SDP) under G. L. c. 123A, § 1. He appeals that finding on the basis of the following: (1) there was insufficient evidence that he was likely to commit a future contact sexual offense or place future victims in reasonable fear thereof; (2) there was insufficient evidence that he was unable to control his sexual impulses; (3) the judge erred in not instructing the jury that they had to find he would commit future contact sexual offenses or place future victims in reasonable fear thereof; (4) the judge erred in admitting risk category labels from the Static 99-R assessment tool; (5) the judge erred in admitting evidence of an overturned prior conviction; and (6) the prosecutor erred when referring to the qualified examiners as "court appointed." We affirm.
Discussion. 1. Sufficiency. Curlew asserts that the evidence cannot support a finding of an inability to control his sexual impulses, or the likelihood of his committing a future contact sexual offense or his placing future victims in reasonable fear thereof. We disagree.
When reviewing the sufficiency of the evidence in an SDP trial, we ask "whether, after viewing the evidence (and all permissible inferences) in the light most favorable to the Commonwealth, any rational trier of fact could have found, beyond a reasonable doubt, the essential elements of sexual dangerousness, as defined by G. L. c. 123A, § 1." Commonwealth v. Husband, 82 Mass. App. Ct. 1, 4 (2012), quoting Commonwealth v. Blake, 454 Mass. 267, 271 (2009) (Ireland, J., concurring).
As applicable to this case, a person is sexually dangerous if he "suffers from a mental abnormality ... which makes the person likely to engage in sexual offenses if not confined to a secure facility." G. L. c. 123A, § 1. This requires proof that "the person [is] a menace to the health and safety of other persons," id., meaning the person "will objectively put his victim in fear of bodily harm by reason of a battery and, specifically, a contact sex crime." Commonwealth v. Fay, 467 Mass. 574, 581, cert. denied, 135 S. Ct. 150 (2014), quoting Commonwealth v. Suave, 460 Mass. 582, 588 (2011).
Here, the Commonwealth put on sufficient evidence to prove Curlew was a menace under the statute. Both qualified examiners (QEs) for the Commonwealth testified that Curlew has a mental abnormality, pedophilic disorder.[2] The jury heard testimony about four separate instances when Curlew sexually touched children. The last of these was the governing offense for the SDP petition, an indecent assault and battery on a child. The jury also heard testimony regarding instances where Curlew isolated children, instructed them to expose their genitals to him, and in at least one occasion, had the child "wiggle" his genitals while the defendant watched. In our view, the jury could have interpreted these as sexual offenses involving constructive contact. See Fay, supra at 582 (pedophilia diagnosis and history of luring children into sexual situations "highly likely to instill in his future victims the reasonable apprehension of being subjected to a contact sexual offense"). Cf. Commonwealth v. Prado, 94 Mass. App. Ct. 253, 253 (2018) ("the act of forcing a person to penetrate her own genital opening constitutes rape within the meaning of G. L. c. 265, § 22").
2. Jury instruction. Curlew also claims the judge erred in not instructing the jury that they had to find that he would either commit future contact sexual offenses or objectively instill fear thereof. We are not persuaded.
In the absence of an objection to the instruction, we review Curlew's challenge to the judge's instructions for error and, if there was error, for a substantial risk of a miscarriage of justice. Commonwealth v. Alphas, 430 Mass. 8, 13 (1999).
Curlew seeks an instruction that is required when the Commonwealth relies solely on evidence of past noncontact sexual misconduct. Commonwealth v. Spring, 94 Mass. App. Ct. 310, 312-313 & 324 (2018). That instruction is not required, however, when, as is the case here, there is sufficient evidence to show a likelihood of committing future contact offenses. See id. at 324. In this case, the jury could have permissibly based their verdict on Curlew's extensive history of actual sexual conduct with children in addition to his history of constructive sexual contact with children.
Furthermore, even assuming arguendo such an instruction was warranted here, we fail to see that a substantial risk of a miscarriage of justice would have resulted from the failure to give it. Curlew had an extensive history of engaging boys and girls, ranging from ages five to early teens, in sexual conduct. His sexual misconduct with children spanned almost thirty years. He considers himself a pedophile, and he feared being around children due to his inability to control his impulses around them. In light of this evidence, there is little likelihood that the verdict would have been different had the requested instruction been given. Alphas, 430 Mass. at 13, quoting Commonwealth v. Freeman, 352 Mass. 556, 564 (1967) (no substantial risk of miscarriage of justice when error "did not 'materially influence[ ]' the guilty verdict").
3. Static-99R. The QEs and the defense expert testified about the Static-99R actuarial tool they used to gauge Curlew's risk of reoffending. Curlew asserts that, because the judge improperly admitted the risk category labels from these assessments, see Commonwealth v. George, 477 Mass. 331, 339-342 (2017), reversal is warranted. We disagree. While the Supreme Judicial Court held in George that the Static-99R categories of labels, such as "moderate-high" or "high," are inadmissible, id. at 341-342, the court also concluded that prejudice will not flow from their improper admission, when, as is the case here, the labels comprised only a small portion of the experts' risk analysis. Id. at 341. As in George, the experts here reviewed "the defendant's family history, educational and work background, incarceration records, treatment history, and release plans" as well as the Static 99-R.[3] Id.
4. Overturned prior conviction. Although information underlying overturned or nol prossed cases is not inherently inadmissible, the inquiry does not end there. Such evidence is permissible when supported by competent evidence. See Commonwealth v. Markvart, 437 Mass. 331, 336-337 (2002). Here, in a recorded police-conducted interrogation, Curlew admitted to Methuen police the facts underlying his Maine conviction. In addition, the judge twice instructed the jury to only consider Curlew's behavior, not the existence of a conviction. We presume the jury followed these instructions. Commonwealth v. Johnston, 467 Mass. 674, 692 (2014).
5. Qualified examiners as "court-appointed." Finally, Curlew complains that the prosecutor's reference to the QEs as "court appointed" in his closing argument created a substantial risk of a miscarriage of justice by improperly bolstering the credibility of the Commonwealth's expert witnesses. While we agree that such a reference was error and misleading, we are not persuaded that it created a substantial risk of a miscarriage of justice.
In its defense, the Commonwealth argues that the Supreme Judicial Court in its decisional law has referred to QEs as "court-appointed." See Johnstone, petitioner, 453 Mass. 544, 551 (2009). While that may be the case, it does not negate the fact that such a characterization is without factual or record support. Clearly, it is the Department of Correction, and not the court, who designates, hires, and pays all QEs. See Edwards, petitioner, 464 Mass. 454, 457-58 (2013) ; G. L. c. 123A, § 1. "The QEs in each particular case are selected by the Department of Correction." Santos, petitioner, 78 Mass. App. Ct. 280, 282 (2010), S.C., 461 Mass. 565 (2012). The prosecutor's claim, therefore, that his experts were "court-appointed" was, at best, misleading.
However, in this case, there is little risk that the comment influenced the verdict. See Alphas, 430 Mass. at 13. All three experts explained their backgrounds, credentials, and the bases for their opinions. Furthermore, one of the Commonwealth's QEs, Dr. Gans, gave a detailed explanation of the hiring process. This provided ample fodder for cross-examination and, even though among the lawyers, the prosecutor has the last word, the judge's instructions, which followed the closing arguments, properly included an instruction that the arguments of the attorneys are not evidence. Wyatt, petitioner, 428 Mass. 347, 359 & n.22 (1998). Accordingly, in our view, the jury were fully able to perform their unique task of weighing the credibility of each expert, see Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co., 439 Mass. 387, 414 (2003), despite the prosecutor's reference to his experts as "court-appointed."
Judgment affirmed.

We therefore need not address whether there was sufficient evidence of Curlew's inability to control his sexual impulses, which is only required when an SDP has a "personality disorder," the alternative to a mental abnormality under the statute. G. L. c. 123A, § 1. See Commonwealth v. Rodriguez, 438 Mass. 1011, 1012 n.2 (2003).

Because Curlew did not object to this at trial, we analyze his claim for a substantial risk of a miscarriage of justice, Alphas, 430 Mass. at 13, a more stringent standard of review than prejudicial error, which the George court used. George, 477 Mass. at 341. As the George court found no prejudice, in this case, we do not find a substantial risk of a miscarriage of justice.